## ROBERT GRAY et al. v. PETER VANDINER, Administrator of Joseph Stidham.

Court of Common Pleas.  New Castle.  December, 1798.

*Rodney's Notes.*

*G. Read* [for plaintiff].  *Bayard* [for defendant].

Question, is the plaintiff who lives out of the state entitled to payment in preference to judgments obtained by inhabitants of this state subsequent to the above.

*Bayard.*  [1] Body Laws 47, 48, Act directs administrator to pay state debts first, express.

*G. Read.*  I know of no judicial decision on this Act.  It is of great importance in commerce and intercourse and should receive a strict construction.  Judgments obtained in lifetime of the party different from the common species of debts, especially where the party had lands, and nothing but payment can discharge a lien upon land, even when due to foreigners, on principle of law, and I conceive when a foreigner obtains judgment in our courts of record, it becomes domestic debt.

*Bayard.*  I do not contend for the policy or liberality of this law.  The only question [is] what did the legislature intend by it.  Reasoning of *Mr. Read* as to priority of judgments in lifetime does not apply.  There are many domestic judgments obtained in lifetime of deceased.  Act gives them the preference.  Death of the party does not alter it.  There can be no lien on the assets in hands of administrator; if any lien, it will operate only on the land itself.  The Court of Appeals have determined where a party had a lien and it was sold by order of Orphans' Court notwithstanding the judgment, creditor may pursue his remedy against the land [in] whosoever hands it may be.

*G. Read.*  If money comes into hands of administrator, it becomes his duty to discharge the encumbrances on the land.

December 19. *Curia advisare vult.* Number 15 and 16 on trial list in same point. Question, can any distinction be taken between personal assets and assets coming into the hands of administrator from the sale of real estate by order of Orphans' Court? Before passing above Act, there was a law for selling lands by Orphans' Court.

CHIEF JUSTICE BASSETT. In this case on the construction of the Act for the priority of debts etc., Chapter 28, 1 Del.Laws 81, the Court have had this case under consideration twelve months and are of opinion judgments obtained in the lifetime of deceased are liens on the deceased's real estate and are to be paid according to their seniority. The Act was not intended to operate on judgments obtained by foreigners in our courts, but in foreign courts; that no other construction we can give will reconcile the different sections of the Act etc.

The following is the opinion as delivered by the CHIEF JUSTICE verbatim:

> The Court are of opinion judgments obtained in the lifetime of the intestate were liens on the real estate of the deceased and are not affected by the Act of Assembly, 1 Body Laws 47, respecting priority of debts etc. Of consequence, such debts, *viz* judgments obtained in lifetime of deceased, are to be paid without regard to the place of the creditor's residence. This Act ought to receive a strict construction; without admitting absurd consequences manifestly contradictory to reason, it cannot operate so as to destroy liens on the real estate of the deceased. The Act is incorrectly penned, and there are many seeming repugnancies which open a door for construction, and it is the duty of the Court to construe the Act so as to produce as little inconvenience as possible and at the same time give the Act a reasonable operation.
>
> The word "judgments" in the preamble may be understood to mean foreign judgments. The words in the enacting clause "in all courts" etc. "that priority of judgments and execution for debts due from any person whatsoever shall be allowed to the inhabitants of this government" confines the cases on which the clause is to operate to suits brought against the executor or administrator and excludes the cases of judgments obtained in the lifetime of the deceased. And the words "no foreign debt shall be paid by any executor or administrator till the debts due to inhabitants be first paid" must be taken in a limited sense, being restrained by the foregoing part of the clause and under-

stood to relate to such foreign debts as are contemplated by the Act, to wit, such for which actions may be brought against executors and administrators, and not judgments against the intestate in his lifetime. To construe the first section to comprehend debts secured by judgment in the lifetime of deceased would be against the express words of the last section, which provides that debts due by judgments in the lifetime shall be paid next after funeral etc., without making any distinction between persons residing in or out of the government; and it is here to be observed, when the legislature intended to regulate debts due by judgments in the lifetime of intestate, they are expressly (by apt words of description) taken notice of, and therefore such species of debts were not intended by the first enacting clause, because not expressly mentioned.

Now, in order to put a reasonable construction on this Act the words must be taken in a limited sense, so as to reconcile the two clauses. The first enacting clause must be understood to give preference to state creditors in the cases where the debts are to be recovered by actions against the administrator, and not to extend to judgments in the lifetime of the deceased or liens on real estate, which [it] would be absurd to suppose the legislature intended to destroy by the circumstance of the death of the debtor. The last clause must be construed to give no preference to state creditors as to such judgments. Therefore the rule which existed previous to the passing this Act must govern, and consequently where there is real estate, the fund arising therefrom must be applied to discharge the judgments obtained in the lifetime of deceased, according to their priority.

[Letter from James P. Wilson.]

Although it may be said that judgments obtained by foreigners in our courts are of such public notoriety as not to be productive of the evils mentioned in the preamble as intended to be prevented, yet it appears to me that these only can be the judgments whose priority is taken away by the Act; for judgments obtained without the province had no priority to be prevented, nor were a real lien upon lands here, nor even conclusive evidence of the debts.

This Act, both from the words and intent of it, relates as well to judgments obtained in the lifetime of the debtor as after his death. Yet, notwithstanding the words "any per-

son whatsoever" are twice expressed, and the words "executors and administrators" omitted in the effective part of the Act, it can evidently from the title, preamble, providing clause, and whole intent of the Act, only have an application where the debtor is dead; and immediately upon his death this Act operates to protect the domestic creditors against the liens of foreigners, by giving domestic debts priority without entirely destroying such liens.

Where there are only foreign debts, or only domestic debts, this Act has no applications, and therefore the determination in the Court of Appeals, being between foreigners only, does not affect this question.

I presume the judge knows I am interested in the above sentiments on the Act alluded to; the Court of Common Pleas having refused my application in the behalf of the domestic creditors of James Brown's estate, upon the principle that the foreign creditors had a legal priority under judgments obtained a short time before Brown's death.

With great respect,
*James P. Wilson.*
February 26, 1798.

I shall be under obligation, if the judge will give me sight of his papers in this cause after the determination of it.

*J. P. W.*